UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHRISA D. WINKLE,

                Plaintiff,

    v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,

                Defendant.

Case No. C17-1633 TSZ

**ORDER REVERSING AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

Plaintiff seeks review of the denial of her application for Supplemental Security Income. Plaintiff contends the ALJ erred in evaluating her severe impairments, several medical opinions, and her symptom testimony. Dkt. 9. As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff is currently 51 years old, has a high school education, and has worked as a retail salesperson. Administrative Record (AR) 29. Plaintiff applied for benefits in January 2013, alleging disability as of December 2009. AR 15. Plaintiff's applications were denied initially and on reconsideration. AR 132, 142. After the ALJ conducted a hearing on February 18, 2016, the ALJ issued a decision finding plaintiff not disabled. AR 40, 15-31.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Plaintiff has not engaged in substantial gainful activity since the application date of January 28, 2013.

**Step two:** Plaintiff has the following severe impairments: peptic ulcer, affective disorder, anxiety disorder, and personality disorder.

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity (RFC):** Plaintiff can lift or carry 20 pounds occasionally and 10 pounds frequently. She can stand or walk for 6 hours and sit for 8 hours a day. She must be able to periodically alternate standing and sitting. She must avoid concentrated exposure to hazards. She is capable of only unskilled, simple, routine tasks. She may have occasional contact with coworkers, with an average occurrence being 10 minutes or less for work tasks. She should have no contact with the general public for work tasks, and only incidental contact otherwise. The claimant should work in occupations that deal with things rather than people. There can be only occasional changes to the work environment in a low stress environment defined as no more than occasional decision making required.

**Step four:** Plaintiff cannot perform past relevant work.

**Step five:** As there are jobs that exist in significant numbers in the national economy that plaintiff can perform, plaintiff is not disabled.

AR 17-31. The Appeals Council denied plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 1.[3]

## DISCUSSION

This Court may set aside the Commissioner's denial of social security benefits only if the ALJ's decision is based on legal error or not supported by substantial evidence in the record as a whole. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). Each of an ALJ's findings must

---

[1] 20 C.F.R. § 416.920.
[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.
[3] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 2

be supported by substantial evidence. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one interpretation, the Commissioner's interpretation must be upheld if rational. *Id.*

**A.     Failure to Analyze Psychotic Disorder as a Severe Impairment**

Plaintiff contends the ALJ erred at step two by failing to include psychotic disorder as one of her severe impairments. Dkt. 9 at 3. An impairment "must be established by objective medical evidence from an acceptable medical source" and is severe unless "it does not significantly limit [a claimant's] physical or mental ability to do basic work activities" such as "[r]esponding appropriately to supervision, co-workers and usual work situations [or] [d]ealing with changes in a routine work setting." 20 C.F.R. §§ 416.921-22.

During a December 2011 emergency room visit, plaintiff was diagnosed with "[p]sychosis" based on a mental status examination with almost entirely abnormal findings, including auditory hallucinations and paranoid delusions. AR 472-73. Examining physician R.A. Cline, Psy.D., diagnosed plaintiff with "[p]sychotic disorder" based on symptoms of "[d]elusional thought processes" and opined that it was "interfering with her ability to accomplish most any task…." AR 902-03. Several other providers or examiners noted

psychotic symptoms or diagnoses and their effects on plaintiff's capacities. *See*, *e.g.*, AR 771 ("Her psychosis seems to be preventing her from doing much at this time."), 434 (identifying plaintiff as "[a]cutely mentally ill [as] defined in the Community Mental Health Services Act (RCW 71.24.035)"), 619 ("delusional and paranoid"), 634 ("Psychosis"), 803 (plaintiff "appears psychotic"). These records are sufficient to establish psychosis as a severe impairment.

The Commissioner argues that any error is harmless because the ALJ found in plaintiff's favor at step two. Dkt. 10 at 2 (citing AR 17; *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017)). While the error is harmless at step two, it still could have "prejudiced [plaintiff] in step three (listing impairment determination) or step five (RFC)...."[4] *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). An ALJ must take into account limitations caused by all of an individual's impairments, whether labeled severe or not, in formulating the RFC. *Buck*, 869 F.3d at 1048-49. "The RFC therefore *should* be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Id.* at 1049 (emphasis in original). Plaintiff argues that her psychotic disorder causes "disabling limitations" not included in the RFC. Dkt. 9 at 6.

An ALJ "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 571 (9th Cir. 1995) (quoting *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984)). The record is replete with clinical observations of delusions, hallucinations, and other psychotic signs. Yet the ALJ's decision only mentions diagnoses of psychosis in passing and offers no analysis of how psychotic symptoms would affect plaintiff's RFC. AR 24, 25, 27. The Court concludes the ALJ erred by failing to address this significant and probative evidence.

---

[4] At step three, the ALJ does not appear to have considered Listing 12.03, "Schizophrenia spectrum and other psychotic disorders." 20 C.F.R. Part 404, Subpart P, Appendix 1. Plaintiff does not claim error at step three, and thus the Court does not address it further.

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 4

On remand, the ALJ must evaluate the extensive evidence concerning plaintiff's psychotic symptoms at step two, proceeding to the other steps as needed.

**B.    Medical Opinions**

Social Security regulations distinguish among treating, examining, and nonexamining physicians.  20 C.F.R. § 404.1527.  "While the opinion of a treating physician is … entitled to greater weight than that of an examining physician, the opinion of an examining physician is entitled to greater weight than that of a non-examining physician."  *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).  An ALJ may only reject the uncontradicted opinion of a treating or examining doctor by giving "clear and convincing" reasons.  *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017).  Even if a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by stating "specific and legitimate" reasons.  *Id.*  The ALJ can meet this standard by providing "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Id.* (citation omitted).

Nurse practitioners and counselors are medical sources but not "acceptable" medical sources.  *See* 20 C.F.R. §§ 404.1502(a), (i); 416.902(a), (i).  An ALJ may discount a non-acceptable medical source's opinions by giving a germane reason.  *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014).

**1.    Luci Carstens, Ph.D.**

In February 2010, Dr. Carstens examined plaintiff and diagnosed her with major depressive disorder, post-traumatic stress disorder (PTSD), and personality disorder.  AR 432.  Dr. Carstens opined that plaintiff had "marked" limitations in her abilities to relate appropriately to coworkers and supervisors, interact appropriately with the public, respond appropriately to the

pressures and expectations of a normal work setting, and maintain appropriate behavior in a work setting. AR 433. She opined that plaintiff had "moderate" limitations in her abilities to learn new tasks and exercise judgment to make decisions. AR 433. Dr. Carstens stated that plaintiff's "primary barrier to her employment relates to mental health issues." AR 435.

The ALJ gave Dr. Carstens' opinions only "partial weight" because they relied on plaintiff's self-reports, they were contradicted by her findings, and she opined that treatment would improve plaintiff's conditions. AR 26-27. Each of these reasons was erroneous.

First, an ALJ may discount medical opinions based to a large extent on a claimant's self-reports, however, "when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim*, 763 F.3d at 1162. Clinical interviews and mental status evaluations "are objective measures and cannot be discounted as a 'self-report.'" *Buck*, 869 F.3d at 1049. Here, Dr. Carstens performed a professional clinical interview and mental status evaluation. AR 437-40. The Mental Status Findings revealed psychomotor, mood, attention, concentration, memory, and abstract reasoning abnormalities. AR 439-40. Dr. Carsten recorded plaintiff's "rather scattered" attempts to provide a mental health history and observed symptoms of depression, anxiety, and PTSD. AR 437, 431, 433. She administered an assessment that revealed "hopelessness, agitation, confusion, and stress…." AR 436. In short, Dr. Carstens' opinions were based primarily on her extensive clinical observations, and thus the ALJ erred in discounting her opinions on the basis that they relied heavily on plaintiff's self-reports.

Second, a "physician's opinions can be discredited based on contradictions between the opinion and the physician's own notes." *Buck*, 869 F.3d at 1050. Here, Dr. Carstens observed "[m]ild neglect of grooming/appearance … in today's session" and accordingly opined that

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 6

plaintiff had "mild" limitation in the ability to care for herself, including personal hygiene and appearance. AR 433. The ALJ finds this opinion inconsistent with the boxes Dr. Carstens check-marked to note that plaintiff's appearance was "[c]asual" and "[a]ppropriate for weather." AR 439; AR 27. Notably, Dr. Carstens did not check the boxes for "[n]eat" or "[c]lean," which were directly above those boxes. AR 439. Dr. Carstens' findings do not contradict her opinions, and thus the ALJ erred in discounting her opinions on this basis.

Finally, "[i]mpairments that can be controlled effectively with [treatment] are not disabling for the purpose of determining eligibility for [social security] benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Dr. Carstens predicted that mental health treatment was "likely to restore or substantially improve" plaintiff's ability to work. AR 434. However, Dr. Carstens also noted that plaintiff was not currently receiving mental health services and "does not have the financial means or medical insurance to pay for services at this time." AR 434. No evidence supports a finding that plaintiff's impairments were actually controlled. The ALJ erred in discounting Dr. Carstens' opinions on this basis.

The Court concludes the ALJ provided no specific and legitimate reason supported by substantial evidence, and thus erred in discounting Dr. Carstens' opinions.

### 2. Ted Ritter, ARNP

In July 2010, treating nurse practitioner Mr. Ritter opined that plaintiff had "marked" limitations in her abilities to follow instructions with three or more steps and maintain appropriate behavior in a work setting. AR 453. He also opined that she would have "moderate" limitations in her abilities to learn new tasks, exercise judgment and make decisions, perform routine tasks, relate appropriately to coworkers and supervisors, and interact appropriately with the public. AR 453. The ALJ gave only "partial weight" to these opinions because Mr. Ritter

opined that mental health intervention would improve plaintiff's ability to work and because he did not "offer acceptable findings" to support the opined limitations. AR 27.

That mental health treatment may have improved plaintiff's ability to work was not a germane reason to discount Mr. Ritter's opinions because plaintiff was not receiving such treatment. In fact, Mr. Ritter observed that he had "known [plaintiff] for 15 years and ha[d] watched her mental health deteriorate over the years…." AR 455. The ALJ erred in relying on this basis.

An ALJ may reject an opinion that is "brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957. Here, however, Mr. Ritter supported his opinions with clinical findings and observations. His observation that plaintiff was "unable to follow 3 part instruction" supported the limitation on following instructions with three or more steps. AR 453. His observation that she was "very scattered and confused" supported the limitations on public interaction, behaving appropriately at work, and interacting appropriately with coworkers and supervisors. AR 453. He observed "poor memory," supporting a limitation on completing tasks and learning new ones. AR 451. In short, the ALJ's finding that Mr. Ritter's opinions were conclusory was not supported by substantial evidence.

The Court concludes the ALJ failed to provide a germane reason supported by substantial evidence, and accordingly erred by discounting Mr. Ritter's opinions.

**3.      R.A. Cline, Psy.D.**

In September 2014, Dr. Cline examined plaintiff and diagnosed her with psychotic disorder "with paranoia and delusions of persecution." AR 903.[5] Dr. Cline opined that plaintiff

---

[5] Dr. Cline noted "[d]elusional thought processes" as a "provisional" symptom. AR 902. She was understandably reluctant to label plaintiff's statements as false without any outside

had "severe" limitation in her ability to complete a normal workday and workweek without interruption from psychologically based symptoms. AR 904. Dr. Cline also opined that plaintiff had "marked" limitations in her abilities to communicate and perform effectively and to maintain appropriate behavior in a work setting. AR 904.

The ALJ gave only "partial weight" to Dr. Cline's opinions, accepting her "mild" and "moderate" limitations but rejecting her "marked" (and presumably "severe") limitations on the grounds that they were "not justified by specific findings, but rather rely on the claimant's own report of symptoms…." AR 28. However, Dr. Cline performed a Psychological/Psychiatric Evaluation that included a professional clinical interview and mental status examination. AR 901-05. She documented delusions, paranoia, tangential speech, abnormal perceptions, variable insight and judgment, memory problems, and limited concentration. AR 901-05. Moreover, although Dr. Cline recorded plaintiff's statements, she clearly doubted their accuracy. Dr. Cline observed that plaintiff's version of events was "questionable as to their basis in reality" and plaintiff "is having some sort of thought disorder, and … may be delusional." AR 901. The ALJ's finding that Dr. Cline's opinions were based on plaintiff's self-reports is not supported by substantial evidence in the record. Accordingly, the ALJ erred by failing to provide a specific and legitimate reason to discount Dr. Cline's opinions.

### 4. Erin Getchman, MA, LMHC

In December 2015, treating counselor Ms. Getchman noted diagnoses of psychotic disorder, PTSD, and secondary psychosis, and opined that plaintiff's impairments "significantly

---

information, but found them hard to believe. *See* AR 901 (Plaintiff "reports that someone has stolen her information and her files here at DSHS so that her records 'have been forged.' It is unclear if this is a delusional belief system or if it is based on reality.").

impact interpersonal interactions, her ability to follow instructions or directions and be around coworkers in an employment setting." AR 976. Ms. Getchman opined that plaintiff "would not be successful maintaining gainful employment." AR 976. The ALJ gave these opinions "little weight" because Ms. Getchman did not "offer acceptable findings" in support. AR 28. However, Ms. Getchman's opinions were based on a five-page Mental Residual Functional Capacity Assessment. AR 977-81. Ms. Getchman had been treating plaintiff for over nine months. AR 976, 965. Her intake report documented "[p]aranoia, flight of ideas," and "delusions around being persecuted." AR 967, 969. She diagnosed plaintiff with psychotic disorder. AR 969. Part of that intake report, a psychiatric evaluation by colleague Sandra C. Walker, M.D., found multiple abnormalities, including easily derailed and incoherent thought, loose associations, scattered thought processes, limited judgment and insight, and poor concentration and attention. AR 973-74. Abnormal or psychotic thoughts included that plaintiff "[b]elieves that someone else is picking up her Adderall and has access to her phone." AR 974.

In short, the ALJ's finding that Ms. Getchman's opinions were conclusory was not supported by substantial evidence. Accordingly, the ALJ erred by failing to provide a germane reason to discount Ms. Getchman's opinions.

**C.    Reliability of Plaintiff's Symptom Testimony**

The ALJ found that plaintiff's statements were "not entirely consistent with the medical evidence and other evidence in the record…." AR 25. The ALJ's reasons do not withstand scrutiny. More importantly, the ALJ failed to address whether plaintiff's testimony was unreliable due to psychotic and delusional mental impairments, which would support rather than undermine her disability claim.

Plaintiff alleges that she experiences anxiety, depression, and constant pain, and that she has "problems dealing with others on an ongoing basis." AR 163. Fatigue and pain interfere with concentration. AR 329. She testified that her arms and fingers get numb. AR 60-61. She has trouble eating. AR 61. When the pain spikes, she has trouble breathing. AR 71. Where, as here, an ALJ determines a claimant has presented objective medical evidence establishing underlying impairments that could cause the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ can only discount the claimant's testimony as to symptom severity by providing "specific, clear, and convincing" reasons. *Trevizo*, 871 F.3d at 678.

The ALJ discounted plaintiff's testimony based on inconsistent statements and a lack of treatment. Inconsistent statements can provide a clear and convincing reason to discount a claimant's testimony. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Here, the ALJ found that plaintiff's "written estimation that she could walk no more than one-quarter mile without rest is not consistent with her testimony that she recently walked to the store 6 blocks away" but six blocks is trivially, if at all, different from a quarter mile.[6] AR 25. The ALJ also found plaintiff's "testimony that she gets no exercise, other than physical therapy, [to be] inconsistent with the alleged severity of her fibromyalgia-type symptoms" but usually people exercise less, not more, when they are in pain. AR 25. These alleged inconsistencies are not a clear and convincing reason to discount plaintiff's testimony.

The ALJ found the relatively little mental health treatment plaintiff received to be inconsistent with the severity of her alleged mental impairments, and her "failure to seek help at

---

[6] The Commissioner's argument that the ALJ was adding the six blocks return trip, as well as time walking in the store, is not found in the ALJ's reasoning and thus is an improper post hoc argument. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 1995). Moreover, the ALJ did not address whether plaintiff rested before walking back.

a pain clinic" inconsistent with her alleged fibromyalgia symptoms. AR 25. An "unexplained or inadequately explained failure" to seek treatment or follow prescribed treatment can be a valid reason to discount a claimant's testimony, but an ALJ must consider a claimant's proffered reasons. *Trevizo*, 871 F.3d at 679-80. Treating physician Dr. Walker found that "[s]ignificantly disorganized thinking" presented a barrier to treatment. AR 974. And Dr. Carstens noted that plaintiff lacked the "financial means or medical insurance to pay for services" at that time. AR 434. The ALJ did not consider either of these reasons.

Furthermore, in this case the record shows that plaintiff herself lacks self-awareness of her severe mental health impairments and why medication is recommended. Multiple providers document delusions, hallucinations, and paranoia. And multiple providers note that plaintiff has "little to no insight into the psychosis she is experiencing." AR 776; *see also* AR 650 ("zero insight"), 749, 819.

The Court already has concluded that the ALJ erred in reviewing the medical evidence and that this matter should be reversed and remanded for further proceedings. The evaluation of a claimant's statements regarding limitations relies in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, *4 (Oct. 25, 2017). In this case in particular, plaintiff's testimony must be evaluated while keeping in mind the medical evidence. For example, the fact that the record is replete with references to plaintiff's delusions and hallucinations casts a different light on the ALJ's finding that plaintiff is an "unreliable historian." *See* AR 22. On remand, the ALJ must reevaluate plaintiff's testimony and statements.

**D.     Scope of Remand**

Plaintiff requests the Court remand for an award of benefits or, in the alternative, for further proceedings. Dkt. 9 at 18. In general, the Court has "discretion to remand for further proceedings or to award benefits." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The Court may remand for further proceedings if enhancement of the record would be useful. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The Court may remand for benefits where (1) the record is fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ fails to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison*, 759 F.3d at 1020. The Court has flexibility, however, "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

Here, the Court finds that enhancement of the record would be useful. Plaintiff argues that her psychotic disorder causes "disabling limitations," but does not specify what limitations. Dkt. 9 at 6. This Court cannot make its own findings. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("we cannot rely on independent findings of the district court. We are constrained to review the reasons the ALJ asserts."). There is no record as to how the ALJ would analyze the evidence of plaintiff's psychotic symptoms in formulating her RFC. There is no testimony from a vocational expert regarding how a properly formulated RFC would affect the vocational base. While Dr. Cline opined that plaintiff was severely limited in the ability to complete a normal workday and workweek, the limitation was not quantified. AR 904. The Court thus cannot compare it to the vocational expert's testimony that missing work more than

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 13

once per month would not be tolerated.  See AR 94-95.  Enhancement of the record would be useful and, accordingly, the Court concludes that remand for further proceedings is appropriate.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should reevaluate the medical evidence and plaintiff's testimony.

DATED this 1st day of November, 2018.

Thomas S. Zilly
United States District Judge

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 14